HABECK et ux, Respondents v.

SAMPSON et ux, Appellants

(221 N.W.2d 483)

(File No. 11343. Opinion filed August 28, 1974)

438

**Willy, Pruitt, Matthews & Jorgensen, Gene E. Pruitt,** Sioux Falls, for defendants and appellants.

**Danforth, Danforth & Johnson, G. J. Danforth, Jr.,** Sioux Falls, for plaintiffs and respondents.

WOLLMAN, Justice.

This case is here on appeal for the second time. In the first appeal, we reversed and remanded for the purpose of giving defendants an opportunity to establish whatever defenses were available to them by calling their own witnesses. Habeck v. Sampson, 87 S.D. 73, 202 N.W.2d 868. After retrial, as in the first case, judgment was entered in favor of plaintiffs decreeing specific performance of the property in question. Defendants have appealed from that judgment.

At the first trial, plaintiff's case consisted of the testimony of the defendants, who were called as adverse witnesses by plaintiffs, and the testimony of the real estate agent who had conducted the negotiations between the parties for the purchase of the land in question. At the second trial after the remand on appeal, plaintiffs offered their own testimony, as well as that of the real estate agent; the transcript of the adverse examination of defendant Harold Sampson on the first trial was also offered and received on behalf of plaintiffs. The only testimony offered by defendants was that of Edith Sampson.

In August of 1968, plaintiffs agreed to purchase from defendants Lot 3, Block 3 of Sampson's Subdivision of Fauske's Addition to Corson, Minnehaha County, South Dakota. Defendants had earlier listed this property for sale with Brandon Realty, a real estate agency conducted by Donald W. Cotton in Brandon, South Dakota. A preliminary offer to purchase the property made by plaintiffs to defendants was rejected by defendants. Plaintiffs then signed what was termed a "Uniform Purchase Agreement" on August 17, 1968, which had been prepared by Mr. Cotton on behalf of defendants. After stating that plaintiffs agreed to purchase the above described property from defendants, the agreement stated in part that:

"\* \* \* subject however, and on condition that the owner thereof has a good and merchantable title, in fee simple, and said owner or vendor agrees to furnish without delay, abstract of title certified to date of sale, and convey or cause to be conveyed said premises by Warranty Deed, and written option to purchase 2 lots across the street west of this property at a price of $250.00 each, such option to be in effect for a period of 2 years from date hereof."

Defendants later signed the acceptance portion of the agreement.

A copy of the plat of the property in question is set forth ·herein:

PLAT OF SAMPSON'S SUBDIVISION OF LOTS 6 to 13, BOTH INCLUSIVE IN BLOCK 3 OF FAUSKE'S ADDITION TO CORSON, SOUTH DAKOTA

Defendants own all five lots in Block 4 of Sampson's Subdivision as shown in the plat above.

On October 9, 1968, defendants delivered to plaintiffs a warranty deed and abstract to the property legally described in the purchase agreement in return for payment of the purchase price by plaintiffs. No additional document in the nature of a written option was ever delivered by defendants to plaintiffs; there is no indication in the record that plaintiffs ever requested such an instrument.

On August 12 or 13, 1970, plaintiffs tendered payment of $500 to defendants and demanded a deed to Lots 3 and 4 of Block 4 of Sampson's Subdivision of Fauske's Addition to Corson, Minnehaha County, South Dakota. Defendants refused to accept the tender and refused to convey said property to plaintiffs, whereupon this litigation for specific performance followed.

At the time plaintiffs looked at the property described in the purchase agreement they were looking for a house that had more land with it. They asked Mr. Sampson if they could buy a house and lot which lay to the north of Lot 3, Block 3, and were told that he had promised that property to a third party. Mr. Habeck testified that:

"* * * he (Sampson) did say he would sell the lots across the street, and this was when we were looking at it, and in doing so he drew a plotting of the lots across the street. As we talked to him at his place of business, the cafe, he took a piece of paper from the adding machine, drew it out, drew where the telephone post was, and exactly how far it went, told us that the first lot was 75 feet, and the next lot was 75 feet—or 65, whatever it was—and our lot overlapped the first lot, and he drew this out. And so we talked about it then before we even made an offer to buy the property. * * *"

Mr. Habeck testified that Lots 3 and 4 of Block 4 of Sampson's Subdivision of Fauske's Addition to Corson as shown by the recorded plat coincided with the plat or drawing sketched by

Sampson during this conversation. Mrs. Habeck testified that she could locate the lots from the sketch.

In the spring of 1969 plaintiff told Mr. Sampson that he and his wife still intended to buy the two lots across the street and received permission from Mr. Sampson to plant a garden and put some swing sets on the lots. On another occasion Mr. Habeck talked with Mr. Sampson about buying the two lots and using them as area for the Habeck children to raise a pony.

The trial court found from the evidence summarized above that based upon the conversations between the parties and the diagram of the two lots in question that had been drawn out on paper by Mr. Sampson, together with the fact that the lots had been utilized by plaintiffs as a garden area and as a play area for plaintiff's children and had been improved by planting and cultivation by plaintiffs, there had been a meeting of the minds as to the two lots to be conveyed and the description thereof. The court found that the purchase agreement constituted an option to purchase the two lots, that it did not violate the statute of frauds, that there was consideration for the giving of the option and that plaintiffs had done everything necessary to entitle them to a conveyance of the two lots.

Defendants contend that the purchase agreement does not contain a description of the land constituting the subject matter of the option sufficient to satisfy the statute of frauds. SDCL 53-8-2. Defendants also contend that the terms of the agreement are not sufficiently definite and certain to justify a decree of specific performance.

■ A contract for the sale of real estate must be in writing, SDCL 53-8-2, and oral testimony is not admissible to supply the material terms of the agreement. Boekelheide v. Snyder, 71 S.D. 470, 26 N.W.2d 74; Shumway v. Kitzman, 28 S.D. 577, 134 N.W. 325; Phelan v. Neary, 22 S.D. 265, 117 N.W. 142.

■ Although the execution of a written contract supersedes all preceding oral negotiations or stipulations, SDCL 53-8-5; Skjoldal v. Myren, 86 S.D. 111, 191 N.W.2d 809, parol evidence is admissible to explain a written contract that is uncertain or

ambiguous. Christiansen v. Strand, 81 S.D. 187, 132 N.W.2d 386; Eggers v. Eggers, 79 S.D. 233, 110 N.W.2d 339.

■ We conclude that in view of the location of the two lots in question in relationship to Lot 3, Block 3, the lack of specificity in the description of the two lots was not such a material defect in the terms of the written purchase agreement that it could not be remedied by parol evidence. The testimony that defendant Harold Sampson agreed to sell plaintiffs the two lots, that he drew a sketch of the two lots which showed their location in relationship to the property being purchased by plaintiffs, and that he told plaintiff the size of the lots established the fact that the parties clearly understood that plaintiffs were to have an option to purchase Lots 3 and 4 of Block 4.

■ As clarified by the evidence of the negotiations between the parties, the purchase agreement was sufficiently clear and definite to warrant a decree of specific performance. Cf. SDCL 21-9-2(6). Moreover, any uncertainty in the identity of the property to be conveyed was removed when defendants put plaintiffs into possession of Lots 3 and 4, Block 4, in the spring of 1969. Crawford v. Carter, 74 S.D. 316, 52 N.W.2d 302; Strom v. Buholz, 73 S.D. 583, 46 N.W.2d 912; 71 Am.Jur.2d, Specific Performance, § 117.

We have considered defendants' argument that plaintiffs abandoned their right to exercise the option and we conclude that the trial court was correct in ruling that there had been no abandonment by plaintiffs.

The judgment is affirmed.

BIEGELMEIER, C. J., WINANS and DOYLE, JJ., and MILLER, Circuit Judge, concur.

MILLER, Circuit Judge, sitting for DUNN, J., disqualified.