MEIERHENRY, Justice
(dissenting).
[¶ 28.] I respectfully dissent. We review the circuit court’s grant of j.n.o.v. under an abuse of discretion standard. Martinmaas, 2000 SD 85, ¶ 20, 612 N.W.2d at 606. Applying this standard, the circuit court should be affirmed. The circuit court correctly focused on whether the facts supported a finding that consideration for the promissory note was, in part, a gambling debt. The circuit court appropriately applied SDCL 53-9-2 to the facts as presented at trial. In the court’s letter decision, the court wrote:
The consideration for the promissory note was clearly the new money which Neve admits he received. The promissory note does not obligate Neve to repay any money owed for a gambling debt. The fact that Neve used a portion of the money received to repay that debt is irrelevant. It would be unfair and contrary to the law to allow Neve to void his debt by making an attenuated connection to a gambling debt.
I agree with the circuit court’s analysis that SDCL 53-9-2 did not apply.
[¶ 29.] SDCL 53-9-2 only voids a note if it was “entered into, where the whole or *90 any part of the consideration thereof shall be for money ..., won or lost, ... upon any game of any kind, under any name or by any means[.]” Id. (emphasis added). The statute in its entirety provides as follows:
Any note, bond, or other contract made and entered into, where the whole or any part of the consideration thereof shall be for money or other valuable thing, won or lost, laid, staked, or betted at or upon any game of any kind, under any name or by any means; or for the repayment of money or other thing of value, lent or advanced, at the time and for the purpose of any game, play, bet, or wager, or being laid, staked, betted, or wagered thereon shall be absolutely void.
Id. (emphasis added).
[¶ 30.] The emphasis in applying this statute should focus on what constitutes “consideration” for the loan. We have previously said:
“ ‘Courts do not lend their aid to parties engaged in transactions in violation of law, and betting and gambling contracts are uniformly held to be contrary to the policy of the law and illegal.’ ‘The test to determine whether the plaintiff is entitled to recover ... is his ability to establish his case without any aid from the illegal transaction.’ ”
Jasper v. Rossman, 73 S.D. 222, 226, 41 N.W.2d 310, 312 (1950) (emphasis added) (citations omitted). The test used in applying SDCL 53-9-2 is whether the promissory note was “the product of a gambling transaction.” Bayer v. Burke, 338 N.W.2d 293, 294 (S.D.1983). In Bayer, the plaintiff was trying to collect on a promissory note for $211,730. The defendant had signed the note after losing $200,000 in bets to the plaintiff. The plaintiffs argument that consideration was his forbearance from suit on the gambling debts was rejected by this Court. These cases give guidance in this case to determine whether Neve’s prior gambling debt constituted part of the consideration. In order for Neve to avoid his obligation, he has to show the note was “the product of a gambling transaction.” Id. If the note stands on its own without the gambling debt, it is not void. Jasper, 73 S.D. at 226, 41 N.W.2d at 312.
[¶ 31.] We should not apply SDCL 53-9-2 with such sweeping breadth that any attenuated wagering between the parties can be used to avoid repaying a legitimate loan. Likewise, we should interpret and apply this statute in light of the current public policy on legalized gambling and the legislature’s recognition of the statutes limited application. See SDCL 42-7B-47 (not applicable to Deadwood gaming); SDCL 42-7B-55 (not applicable to “authorized gaming and lotteries”). Under the modern treatment of certain types of gambling in this State, it is unlikely the Legislature intended that SDCL 53-9-2 be applied as a shield to escape repaying a genuine loan because of an attenuated, separate gambling transaction.
[¶ 32.] Even considering Neve’s testimony in a favorable light, he has not shown the note was a product of a gambling transaction or that the loan cannot stand on its own without the gambling debt. Neve admits he received $30,000 of new money that he used to pay outstanding debts owed to a variety of creditors. Neve testified he was in financial trouble with the IRS, had medical bills, truck loans and other “stuff,” and that Davis had agreed to help him by loaning him $30,000. Neve testified the $30,000 went to his attorney who used most of the-money to pay Neve’s bills. Neve said he asked the attorney for $4,000 “because I wanted to pay Don [Davis] off right away on the money that I owed him for gambling.” On cross- *91 examination, Neve admitted he was only claiming that “$1,500 was used after the money was given to [him] to pay off a preexisting [gambling] debt.” Neve did not testify that Davis loaned him $30,000 in exchange for repayment of the $1,500 gambling debt.
[¶ 33.] This is not merely a question of who the jury believed — Davis or Neve. Even taking Neve’s testimony in the light most favorable to the verdict, the question is whether the evidence supports the requirements of the statute as a matter of law. Neve’s attorney in both his opening and closing statements to the jury said that if they found any part of the loan made to Neve “was used to pay a gambling debt,” it voided the note. This, of course, is not a correct statement of the law. The gambling debt must be part of the consideration.
[¶ 34.] Neve’s only evidence to support his claim it was part of the consideration was that he repaid the prior $1,500 gambling debt from the proceeds of the $30,000, and that Davis told him not to mention the gambling debt to the lawyer. The rest of Neve’s argument that the gambling debt constituted consideration for the note was based on insinuation and innuendo. He argues consideration can be gleaned from Davis’ alleged “disguise and artifice” and that Davis only loaned Neve the additional $30,000 in an attempt to get the gambling debt paid out of the proceeds and then get paid again. This argument is based more on speculation than any evidence presented at trial. Notably, Neve did not testify that Davis required repayment of the $1,500 as part of the loan. A verdict cannot be based on speculation or guesswork. See cf. Von Sternberg v. Coffee, 2005 SD 14, ¶ 18, 692 N.W.2d 549, 555 (citing jury instructions that prohibit rendering a verdict based on speculation or guesswork).
[¶ 35.] If, as Neve claimed, he used $1,500 to pay off his prior gambling debt, he still was obligated to repay the entire $30,000 under the promissory note. Thus, based on the facts as Neve has presented them, the gambling debt was not the product of the promissory note and loan. Consequently, the circuit court properly recognized the gambling debt was too attenuated to be deemed part of the consideration for the loan. I would hold that the circuit court properly interpreted and applied the law to the facts as presented by Neve and did not abuse its discretion in granting a j.n.o.v.
[¶ 36.] SABERS, Retired Justice, joins this dissent.